**FILED**

**U.S. Bankruptcy Appellate Panel
of the Tenth Circuit**

NOT FOR PUBLICATION[1]

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE TENTH CIRCUIT**

**April 15, 2026**

**Anne M. Zoltani
Clerk**

_____

| | |
|---|---|
| IN RE ANTHONY QUINN MICHAELS, | BAP No. WY-25-016 |
| Debtor. | |
| | |
| _____ | |
| | Bankr. No. 24-20104 |
| DESIREE MYRUM, | Adv. No. 24-02004 |
| | Chapter 7 |
| Plaintiff - Appellant, | |
| v. | |
| ANTHONY QUINN MICHAELS, | OPINION |
| Defendant - Appellee. | |

_____

Appeal from the United States Bankruptcy Court
for the District of Wyoming

_____

Before **HALL**, **LOYD**, and **HUNT**, Bankruptcy Judges.

_____

**LOYD**, Bankruptcy Judge.

_____

Not every debt listed in a bankruptcy petition begins in a business transaction or a

failed venture; some arise from deeply personal and painful events. This appeal stems

---

[1] This unpublished opinion may be cited for its persuasive value but is not
precedential, except under the doctrines of law of the case, claim preclusion, and issue
preclusion. 10th Cir. BAP L.R. 8026-5.

from one such incident. After Desiree Myrum was severely injured in a dog attack, she

obtained a $30,000 stipulated judgment against the dog's owner, Anthony Michaels, in

Wyoming state court. When Michaels failed to pay and filed a chapter 7 petition, Myrum

initiated an adversary proceeding seeking to except the judgment from discharge under

11 U.S.C. § 523(a)(2)(A) [2] and to deny his discharge under § 727(a)(4). The Bankruptcy

Court entered judgment for Michaels at the close of Myrum's case in a bench trial. This

appeal followed.

For the reasons that follow, we affirm. The record does not establish the stipulated

judgment was procured by false pretenses, false representation, or actual fraud, nor does

it demonstrate the requisite intent to deceive or justifiable reliance. We further conclude

the Bankruptcy Court applied the correct procedural framework in entering judgment in

this nonjury proceeding. Accordingly, the judgment of the Bankruptcy Court is affirmed.

## I.    Background

Desiree Myrum ("Appellant") was severely bitten in the face by a Mastiff Pit Bull

dog owned by Anthony Michaels ("Appellee") while the dog was staying at her father's

residence. The attack caused significant injuries and disfigurement requiring plastic

surgery and caused her to incur significant medical bills and a scar on her face. Appellant

later sued Appellee in Wyoming state court for negligence and personal injury damages.

In February 2023, the parties entered into a stipulated judgment against Appellee and in

---

[2] Unless otherwise noted, all references to "Section," "§," "Bankruptcy Code," and "Code" refer to the U.S. Bankruptcy Code, 11 U.S.C. § 101, et seq., and all references to the "Rules" refer to the Federal Rules of Bankruptcy Procedure. All references to the "Civil Rules" refer to the Federal Rules of Civil Procedure.

favor of Appellant for $30,000 (the "Stipulated Judgment"). After Appellee failed to make any payments on the Stipulated Judgment, Appellant attempted to garnish Appellee's wages. On April 1, 2024, Appellee filed a chapter 7 petition and listed Appellant as a creditor.

On July 8, 2024, Appellant commenced an adversary proceeding asserting the Stipulated Judgment was nondischargeable under § 523(a)(2)(A) and Appellee's discharge should be denied under § 727(a)(4). The Bankruptcy Court held a trial on May 13, 2025 (the "Hearing"). After Appellant rested, Appellee moved for "judgment as a matter of law."[3] The Bankruptcy Court granted the motion from the bench and entered judgment for Appellee on all claims. On May 13, 2025, the Bankruptcy Court entered a separate written judgment (the "Order").[4] On May 21, 2025, Appellant appealed the Order.

## II.    Jurisdiction

This Court has jurisdiction to hear timely filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit, unless a party elects to have the district court hear the appeal.[5] No party elected to have the district court hear the appeal. Appellant timely filed her notice of appeal from the Order, which fully

---

[3] Tr. at 31 in Appellant's App. at 172.
[4] Order in Appellant's App. at 134.
[5] 28 U.S.C. § 158(a)(1), (b)(1), (c)(1); Fed. R. Bankr. P. 8003, 8005.

3

resolved all the claims in the adversary proceeding and is therefore a final, appealable order.[6] Accordingly, this Court has jurisdiction to review the Order.

### III.    Issues on Appeal and Standard of Review

Appellant asserts the following two issues on appeal:

1.  In an adversary proceeding in bankruptcy seeking denial of discharge under 11 USC §523 (a) (2) (A) where there is ample evidence of fraud in the inducement did the court err when it granted defendant's motion for judgment contrary to *Field v. Mans*, 516 U.S. 59, 74–75, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995)?

2.  Did the court properly apply the *Federal Rules of Civil Procedure* in a bankruptcy adversary proceeding regarding the Motion for Judgment under Rule 50 (a) Fed[.] R.[ ]Civ.[ ]P[.]?[7]

Appellant argued at oral argument that Appellee's discharge should also be denied under § 727. That issue was not included in her statement of issues on appeal, was not mentioned in her opening brief, and was addressed in one sentence in her reply brief. Accordingly, the § 727 argument is waived and we decline to consider it.[8]

"A decision whether to grant or deny a discharge is in the sound discretion of the bankruptcy court, and a bankruptcy court's grant of discharge is therefore reviewed for

---

[6] *In re Durability, Inc.*, 893 F.2d 264, 265–66 (10th Cir. 1990) ("[A]n order is final if it ends the litigation on the merits. . . . [T]he appropriate 'judicial unit' for application of these finality requirements in bankruptcy is not the overall case, but rather the particular adversary proceeding[.]").

[7] Appellant's Am. Opening Br. at 4.

[8] *See Fed. Ins. Co. v. Tri-State Ins. Co.*, 157 F.3d 800, 805 (10th Cir. 1998) ("Issues raised for the first time at oral argument are considered waived."); *see also Wheeler v. Comm'r*, 521 F.3d 1289, 1291 (10th Cir. 2008) ("[I]ssues raised by an appellant for the first time on appeal in a reply brief are generally deemed waived[.]").

abuse of discretion."[9] Similarly, a bankruptcy court's evidentiary rulings are reviewed for abuse of discretion.[10] Under the abuse of discretion standard, this Court will not disturb a bankruptcy court's decision unless the Court has "a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances."[11] "When we apply the 'abuse of discretion' standard, we defer to the trial court's judgment because of its first-hand ability to view the witness or evidence and assess credibility and probative value."[12] A clear example of an abuse of discretion exists where the trial court "commits a legal error or relies on clearly erroneous factual findings."[13] The Court reviews a bankruptcy court's conclusions of law de novo and

---

[9] *Lee v. Peeples (In re Peeples)*, 779 F. App'x 561, 565 (10th Cir. Aug. 12, 2019) (unpublished) (reviewing for abuse of discretion a bankruptcy court's ruling in favor of debtor on a § 727(a)(3) claim and grant of debtor's discharge) (citation modified); *see also U.S. Tr. v. Garland (In re Garland)*, 417 B.R. 805, 810 (10th Cir. BAP 2009) (reviewing for abuse of discretion and affirming order denying discharge pursuant to § 727) (quoting 4 *Norton Bankr. L. & Prac. 3d* § 86:1 (2009)). We note the Tenth Circuit BAP has also held the determination of the nondischargeability of debt is an issue of law reviewed de novo in *Cousatte v. Lucas (In re Lucas)*, 300 B.R. 526, 530 (10th Cir. BAP 2003); however, because the abuse of discretion standard encompasses review of conclusions of law and factual findings, these contrary holdings do not have a practical impact on the standard of review in this matter.

[10] *United States v. Yeley-Davis*, 632 F.3d 673, 683 (10th Cir. 2011); *Hepner v. Perry (In re Kleinhans)*, No. CO-09-029, 2010 WL 1221751, at *3 (10th Cir. BAP Mar. 30, 2010) (unpublished) (same).

[11] *United States v. Ortiz*, 804 F.2d 1161, 1164 n.2 (10th Cir. 1986).

[12] *Id.*

[13] *Cruz v. Farmers Ins. Exch.*, 42 F.4th 1205, 1210 (10th Cir. 2022) (internal citation omitted); *see also Jackson v. Los Lunas Cmty. Program*, 880 F.3d 1176, 1191 (10th Cir. 2018) ("A clear example of an abuse of discretion exists where the trial court fails to consider the applicable legal standard or the facts upon which the exercise of its discretionary judgment is based." (quoting *Ohlander v. Larson*, 114 F.3d 1531, 1537 (10th Cir. 1997)).

factual findings, including findings regarding intent to deceive or justifiable reliance, for clear error.[14]

### IV. Analysis

**1. The Bankruptcy Court did not err in failing to find the Stipulated Judgment nondischargeable under § 523(a)(2)(A).**

Section 523(a)(2)(A) excepts from discharge any debt "for money, property, services . . . obtained by—false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's . . . financial condition."[15] These three grounds—false pretenses, false representation, and actual fraud—can each be a basis for relief with their own distinct elements but all three share common requirements: a debtor's intent to

---

[14] *See In re Woods*, 743 F.3d 689, 692 (10th Cir. 2014); *Glencove Holdings, LLC v. Bloom (In re Bloom)*, No. 22-1005, 2022 WL 2679049, at *5 (10th Cir. July 12, 2022) (unpublished); *Snyder v. Schlesselman (In re Snyder)*, No. CO-08-101, 2009 WL 1649155, at *4 (10th Cir. BAP June 11, 2009) (unpublished).

[15] *Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1373 (10th Cir. 1996) (citing § 523(a)(2)(A)).

deceive and justifiable reliance.[16] To establish a claim is nondischargeable under

§ 523(a), the creditor bears the burden of proof by a preponderance of the evidence.[17]

### a.    False Pretenses

"False pretenses under Section 523(a)(2)(A) are implied misrepresentations

intended to create and foster a false impression"[18] and "can be 'defined as any series of

events, when considered collectively, that create a contrived and misleading

understanding of a transaction, in which a creditor is wrongfully induced to extend

---

[16] To establish a claim for false representation or false pretenses, the Tenth Circuit has held a creditor must prove five elements under § 523(a)(2)(A): (1) the debtor made a false representation or omission; (2) the debtor made the representation or omission with the intent to deceive the creditor; (3) the creditor relied on the representation or omission; (4) the creditor's reliance was justifiable; and (5) the debtor's representation or omission caused the creditor to sustain a loss. *Young*, 91 F.3d at 1373; *Bank of Cordell v. Sturgeon (In re Sturgeon)*, 496 B.R. 215, 222 (10th Cir. BAP 2013). "To establish a debt is excepted from discharge . . . based on actual fraud, the creditor must show: (a) the debtor committed actual fraud; (b) the debtor obtained money, property, services, or credit by the actual fraud; and (c) the debt arises from the actual fraud." *Hatfield v. Thompson (In re Thompson)*, 555 B.R. 1, 10 (10th Cir. BAP 2016). Although *Husky* clarified "anything that counts as 'fraud' and is done with wrongful intent is 'actual fraud,'" *Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. 355, 360 (2016), the Tenth Circuit has made clear even where the alleged fraud rests on a misrepresentation or omission, the creditor must still prove the traditional § 523(a)(2)(A) elements, including intent to deceive and justifiable reliance. *See In re Young*, 91 F.3d at 1373; *Johnson v. Riebesell (In re Riebesell)*, 586 F.3d 782, 789 n.3 (10th Cir. 2009).

[17] *Grogan v. Garner*, 498 U.S. 279, 291 (1991) ("[T]he standard of proof for the dischargeability exceptions in 11 U.S.C. § 523(a) is the ordinary preponderance-of-the-evidence standard."); *Young*, 91 F.3d at 1373 ("[T]o establish that a claim is nondischargeable under [§ 523(a)(2)(A)], the creditor must prove the following elements by a preponderance of the evidence. . . .").

[18] *Sturgeon*, 496 B.R. at 223.

money or property to the debtor.'"[19] False pretenses include conduct and material omissions.[20]

Appellant discusses this standard and, although not explicit, suggests Appellee engaged in false pretenses. Appellant also states, "The evidence at the close of the [Appellant's] case showed that the defendant had made an explicit, or at least an implicit, promise to pay the [S]tipulated [J]udgment when he agreed to it."[21] Appellant does not otherwise develop a distinct false-pretenses theory. The Bankruptcy Court made no explicit findings regarding false pretenses under § 523(a)(2)(A) in the Order or at the Hearing.

Appellant's arguments do not satisfy the legal standard for false pretenses. While Appellant accurately characterizes the legal definition of false pretenses, Appellant does not, however, identify conduct in the record creating a contrived and misleading understanding, which led her to enter into the Stipulated Judgment. Rather, Appellant's arguments focus on later events, nonpayment and the bankruptcy filing, which do not bear on whether she was misled at the time the debt was created.

To the extent Appellant argues the Stipulated Judgment reflected an "implicit promise to pay"[22] which Appellee never intended to keep, she does not tie the assertion to

---

[19] *Id.* (quoting *Stevens v. Antonious (In re Antonious)*, 358 B.R. 172, 182 (Bankr. E.D. Pa. 2006)).

[20] *See Marks v. Hentges (In re Hentges)*, 373 B.R. 709, 725 (Bankr. N.D. Okla. 2007) (false pretenses are "implied misrepresentations or conduct intended to create and foster a false impression." (internal quotations omitted)).

[21] *Id.* at 18.

[22] *Id.*

8

evidence in the record showing Appellee engaged in deceptive conduct amounting to false pretenses. Specifically, Appellant fails to show how an implied promise to pay coupled with subsequent nonpayment constitutes conduct or a material omission sufficient to establish false pretenses, nor does she identify any deceptive acts, concealment of material facts, or contrived course of conduct sufficient to show false pretenses that wrongfully induced her to enter into the Stipulated Judgment.[23]

Accordingly, the record does not support Appellant's argument that the evidence establishes false pretenses.

### b.    False Representation

"[False] representations are representations knowingly and fraudulently made that give rise to [a] debt."[24] The Bankruptcy Court expressly found Appellant "failed to identify any false representation that was made by defendant which induced her to enter into the stipulated judgment,"[25] explaining the Stipulated Judgment "is not a promise to pay" but rather "an admission of liability."[26]

---

[23] Courts may consider subsequent conduct to the extent it sheds light on the debtor's contemporaneous state of mind when the representation was made. *See Groetken v. Davis (In re Davis)*, 246 B.R. 646, 652 (10th Cir. BAP 2000), *aff'd in part, vacated in part*, 35 F. App'x 826 (10th Cir. 2002) ("The court may consider not only the debtor's conduct at the time of the representations, but may consider subsequent conduct, to the extent that it provides an indication of the debtor's state of mind at the time of the actionable representations."); *see also Farmers Co-op. Ass'n of Talmage, Kan. v. Strunk*, 671 F.2d 391, 395 (10th Cir. 1982) ("Subsequent conduct is often probative of one's intent on a prior occasion.").

[24] *Cobb v. Lewis (In re Lewis)*, 271 B.R. 877, 885 (10th Cir. BAP 2002).

[25] Tr. at 43 in Appellant's App. at 184.

[26] *Id.*

First, Appellant argues the debt is nondischargeable under § 523(a)(2)(A) because it was obtained through fraudulent misrepresentation, relying on *Field* and *Sturgeon*.[27] Appellant contends Appellee "made a false representation . . . with the intent to deceive the creditor; the creditor relied on the repre-sentation [sic]; the creditor's reliance was reasonable; and the debtor's false representation caused the creditor to sustain a loss."[28] Appellant asserts Appellee's "failure to make any payment on the judgment at any time while earning $6[,]000 a month clearly infers that [he] never intended to live up to the stipulated judgment."[29]

Appellant does not satisfy the legal standard for false representation. Appellant's false representation theory is not persuasive because it rests on Appellee's subsequent failure to pay the Stipulated Judgment rather than on any false statement which induced Appellant to enter into it. Based on the record, Appellee did not make any false representations in entering into the Stipulated Judgment. Specifically, by entering into the Stipulated Judgment, Appellee did not make a false promise to pay, as the Stipulated Judgment functions as an admission of liability rather than a promise to pay.[30]

---

[27] Appellant's Am. Opening Br. at 4–5, 13–16.

[28] *Id.* at 15.

[29] *Id.* at 13–14.

[30] *See Field v. Mans*, 516 U.S. 59, 66–68 (1995) (holding § 523(a)(2)(A) requires a causal connection between a false representation and the debtor's obtaining of money, property, services, or credit); *Archer v. Warner*, 538 U.S. 314, 320–22 (2003) (explaining a settlement agreement or judgment does not itself create fraud or supply a misrepresentation where none existed, though it does not bar inquiry into whether the underlying debt arose from fraud); *United States v. Rothhammer*, 64 F.3d 554, 557–58 (10th Cir. 1995) (defining a "promise" as an affirmative undertaking to pay, not a mere acknowledgment of an existing obligation); *Krietzberg v. Mucci (In re Mucci)*, 488 B.R. 186, 196 (Bankr. D.N.M. 2013) (stipulated judgment functioned as a payment agreement

Appellant's argument suggesting Appellee's nonpayment, despite his income, establishes fraud is not persuasive because, although courts may consider subsequent conduct to the extent it sheds light on a debtor's contemporaneous state of mind,[31] Appellant identifies no additional circumstances from which an inference could be drawn showing Appellee lacked an intent to perform when the Stipulated Judgment was executed. Appellant relies solely on Appellee's later nonpayment despite his income. Standing alone, subsequent nonperformance does not establish any representation was false when made or Appellee entered the Stipulated Judgment with a contemporaneous intent not to perform. Under § 523(a)(2)(A), the relevant inquiry is whether a knowingly false representation caused the creditor to part with money, property, services, or credit, not whether the debtor later failed to perform an admitted obligation.

Accordingly, the Bankruptcy Court did not err as a matter of law and did not make clearly erroneous factual findings in determining Appellant failed to establish a false representation.

### c.    **Actual Fraud**

"Actual fraud" under § 523(a)(2)(A) encompasses "anything that counts as 'fraud' and is done with wrongful intent,"[32] and includes fraudulent schemes which need not involve a specific misrepresentation.[33] Later nonperformance, even when coupled with a

---

where it imposed express payment terms, including a reduced payoff amount, interest, and a deadline).

[31] *See Groetken v. Davis (In re Davis)*, 246 B.R. 646, 652 (10th Cir. BAP 2000), *aff'd in part, vacated in part*, 35 F. App'x 826 (10th Cir. 2002).

[32] *Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. 355, 360 (2016).

[33] *See id.* at 365–66.

subsequent bankruptcy, cannot independently establish actual fraud because actual fraud requires "forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation" and occur before and induce the debt.[34] Likewise, a claim under § 523(a)(2)(A) requires the debtor "commit[] actual fraud" and the creditor's debt "arise[] from the actual fraud."[35]

The Bankruptcy Court did not make any explicit findings Appellee committed actual fraud. At the Hearing, the Bankruptcy Court's references to "fraud" were made in the context of rejecting Appellant's theories under the subsection generally, not as a distinct actual fraud determination. The Bankruptcy Court emphasized Appellant "failed to identify any false representation that was made by defendant that induced her into entering into the stipulated judgment"[36] and concluded Appellant's misunderstanding of bankruptcy "does not impute fraud . . . to [Appellee]."[37]

Appellant begins by asserting "a debtor misrepresenting present intent to pay a debt when incurred is fraud"[38] and argues Appellee's conduct satisfies this principle. Appellant contends "[w]hen a debt follows . . . an extension of credit induced by falsity or fraud . . . the debt is not dischargeable under 11 U.S.C. § 523(a)(2)(A)"[39] and contends the Stipulated Judgment was obtained through such fraudulent inducement.[40] Appellant

---

[34] *See id.* at 359.

[35] *Hatfield v. Thompson (In re Thompson)*, 555 B.R. 1, 10 (10th Cir. BAP 2016).

[36] Tr. at 43 in Appellant's App. at 184.

[37] *Id.* at 44 in Appellant's App. at 185.

[38] Appellant's Am. Opening Br. at 15.

[39] *Id.* at 13. The Court notes that Appellant's quotation selectively excerpts the cited decision and omits limiting language relevant to the Court's holding.

[40] *Id.* at 14.

maintains her "uncontroverted evidence at trial show[ed] a prima facie case of fraud in the inducement justifiably relied upon by the plaintiff, under 11 USC [§] 523(a)(2)(A)."[41] She further argues Appellee "never intended to live up to the stipulated judgment," asserting "[t]he debtor's failure to make any payment on the judgment at any time while earning $6[,]000 a month clearly infers that the debtor never intended to live up to the stipulated judgment. This is fraud in the inducement."[42]

Appellant does not satisfy the legal standard for actual fraud. Appellee's disclosure he "might file bankruptcy" was made before the parties entered into the Stipulated Judgment and was conveyed to Appellant's counsel, and nothing in the record supports a determination the disclosure was part of a fraudulent scheme or artifice. Appellant also testified about her belief on what "bankruptcy" meant came from her own misunderstanding rather than any statement by Appellee,[43] and she identified no conduct showing Appellee attempted to exploit that misunderstanding. Likewise, Appellant presented no evidence the later nonpayment and subsequent bankruptcy reflected a fraudulent plan formed at the time of the Stipulated Judgment. Taken together, the record does not support the existence of a pre-existing fraudulent scheme or wrongful intent necessary to establish actual fraud.

---

[41] *Id.* at 8.

[42] *Id.* at 13–14.

[43] Tr. at 44 in Appellant's App. at 185.

13

### d. **Intent to Deceive**

A finding regarding intent to deceive will be determined on a case-by-case basis, with the particular facts and circumstances of the case playing a very large role.[44] Whether a debtor acted with intent to deceive is measured by a debtor's subjective intention—i.e., the debtor's actual knowledge and belief—at the time the representation, false pretenses, or other fraudulent conduct occurred.[45] Thus, such intent "may be inferred from the totality of the circumstances."[46] That said, a debtor's intent to deceive—i.e., a debtor's actual intention not to pay at the time they promised to do so— cannot be inferred solely by the fact the debtor does not repay the debt and seeks bankruptcy protection.[47] Although, in analogous circumstances, this Court has held a

---

[44] *Chevy Chase Bank FSB v. Kukuk (In re Kukuk)*, 225 B.R. 778, 786 (10th Cir. BAP 1998).

[45] *DSC Nat'l Props., LLC v. Johnson (In re Johnson)*, 477 B.R. 156, 169–70 (10th Cir. BAP 2012) ("The debtor must have acted with the *subjective intent* to deceive the creditor."); *Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1375 (10th Cir. 1996) (A "debtor's intent to deceive . . . may be inferred from the totality of the circumstances or from a knowingly made false statement." (internal citations omitted)).

[46] *Young*, 91 F.3d at 1375 (internal citations omitted).

[47] *Kukuk*, 225 B.R. at 786 (citing Restatement (Second) of Torts § 530(1) cmt. d (An intention not to perform under an agreement cannot be "established solely by proof of . . . nonperformance, nor does [the promisor's] failure to perform the agreement throw upon him the burden of showing that his nonperformance was due to reasons which operated after the agreement was entered into.") and *Collier*, ¶ 523.08[1][d] at 523–44 ("The failure to perform a mere promise is not sufficient to make a debt nondischargeable, even if there is no excuse for the subsequent breach.") (other citation omitted)). We note several bankruptcy courts have held to the contrary explaining "[i]ntent not to perform may be inferred from the fact that the debtor failed to take any steps to perform under the contract." *Creal Dallas, LLC v. Viciedo (In re Viciedo)*, 612 B.R. 233, 239 (Bankr. M.D. Fla. 2020); *Wang v. Ling (In re Ling)*, 646 B.R. 540, 547 (Bankr. S.D. Fla. 2022).

14

creditor may demonstrate intent to deceive if they can show the debtor incurred debt with "no intent to repay" and a debtor's ability to pay is relevant to the determination of whether the debtor never intended to repay the debt.[48]

In addressing Appellee's state of mind at the time of the Stipulated Judgment, the Bankruptcy Court found Appellant was aware Appellee was contemplating filing for bankruptcy but misunderstood the implications of what it could mean to file bankruptcy. A misunderstanding that "does not impute fraud . . . to [Appellee]."[49] The Bankruptcy Court further found there was "no evidence defendant was aware of the plaintiff's naivete regarding bankruptcy,"[50] particularly given Appellant was represented by counsel. Finally, in evaluating Appellee's intent at inception, the Bankruptcy Court determined Appellee's "failure to honor his obligations under the [Stipulated Judgment], without more, does not mean defendant fraudulently induced plaintiff to enter into the agreement, nor does it mean he . . . intended not to honor his obligations at the time of the judgment."[51]

Appellant argues Appellee's intent to deceive is shown both through his statements and through circumstantial evidence. She points to Appellee's statement he might file for bankruptcy at the time of the stipulation, characterizing it as "clear admission bt [sic] a party opponent evidence of the debtor's intent to welsh on the debt

---

[48] *Kukuk*, 225 B.R. at 787 (The ability to pay "should not be dispositive on the issue of fraudulent intent, but may be a necessary part of inferring whether or not the debtor incurred the debt with no intent of repaying it.").

[49] Tr. at 44 in Appellant's App. at 185.

[50] *Id.*

[51] *Id.* at 44–45 in Appellant's App. at 185–86.

from the very beginning despite his ability to pay."[52] Appellant further invokes the Tenth Circuit's rule describing "intent to deceive may be inferred from the totality of the circumstances,"[53] citing *In re Riebesell*, and contends the circumstances here show fraudulent intent: "He offered a stipulated judgment. . . . Nothing was paid, bankruptcy followed even though his financial situation never deteriorated, and his bankruptcy petition misrepresented his assets."[54]

Appellant does not satisfy the legal standard for intent to deceive. Appellant relies on two circumstances: Appellee's failure to make payments and his statement he might file bankruptcy. Neither supports an inference Appellee lacked an intent to perform when the Stipulated Judgment was executed.[55]

Moreover, even if Appellee's statement suggesting he might file bankruptcy could support an inference he never intended to pay, Appellant does not raise on appeal any challenge to the Bankruptcy Court's determination that Appellant "must prove fraud caused her to sustain a loss. The [S]tipulated [J]udgment did not create the loss."[56] Thus, even if the Bankruptcy Court had erred regarding the requisite intent to deceive, such error would not warrant reversal because the Bankruptcy Court also concluded Appellant

---

[52] Appellant's Am. Opening Br. at 14.

[53] *Id.* at 16.

[54] *Id.*

[55] *See Chevy Chase Bank FSB v. Kukuk (In re Kukuk)*, 225 B.R. 778, 786 (10th Cir. BAP 1998) (describing postagreement nonperformance, standing alone, does not demonstrate fraudulent intent at inception).

[56] Tr. at 45 in Appellant's App. at 186.

16

failed to prove another element of § 523(a)(2)(A), and Appellant does not challenge the conclusion on appeal.

### e.    Reliance

Justifiable reliance rather than reasonable reliance is the standard under § 523(a)(2)(A).[57] It is a subjective standard examining "the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case," rather than an objective community norm.[58] At the same time, the standard does not require objectively prudent conduct; reliance may be justifiable unless the falsity would be apparent from a cursory glance or the circumstances present "something which should serve as a warning that [one] is being deceived," in which case the duty to investigate arises.[59]

The Bankruptcy Court concluded "it is unclear how plaintiff could have justifiably relied on that representation when specifically advised of defendant's potential need to file bankruptcy as she was represented by counsel."[60] The Bankruptcy Court emphasized Appellant was specifically advised by counsel Appellee might file for bankruptcy and

---

[57] The Supreme Court has held § 523(a)(2)(A) requires justifiable, not reasonable, reliance. *Field v. Mans*, 516 U.S. 59, 70–75 (1995). By contrast, reasonable reliance is an objective standard, requiring the creditor to act as a prudent person would under similar circumstances. *See Johnson v. Riebesell (In re Riebesell)*, 586 F.3d 782, 789 n.3 (10th Cir. 2009) (confirming justifiable reliance is the correct standard under § 523(a)(2)(A)).

[58] *Field*, 516 U.S. at 71 (quoting Restatement (Second) of Torts § 545A cmt. b). Under *Field*, a creditor is "required to use his senses, and cannot recover if he blindly relies upon a misrepresentation, the falsity of which would be patent . . . if he had utilized his opportunity to make a cursory examination or investigation." *Id.*

[59] *Id.*

[60] Tr. at 45 in Appellant's App. at 186. The representation the Bankruptcy Court was referring to was Appellant's contention, "she justifiably relied upon defendant's admission of financial liability to her detriment." *Id.*

noted counsel could have informed Appellant of the consequences of the bankruptcy.[61] The Bankruptcy Court further found Appellant's admitted misunderstanding of the bankruptcy process "does not impute fraud, though, to [Appellee]."[62]

Appellant maintains she justifiably relied on Appellee's representation of liability through the Stipulated Judgment. She states the following: "Given the nature of the stipulation, a judicial judgment, the plaintiff clearly and justifiably relied on such a representation of his admitted liability for damages."[63] Appellant further argues the Bankruptcy Court applied the wrong reliance standard, asserting "[t]he court's seeming reference to the 'reasonable reliance' standard under 523(a)(2)(B), rather than the 'justifiable reliance' under 523(a)(2)(A) . . . stretches the role of the 'lawyer' to[o] far."[64] In support, Appellant contends her personal injury attorney lacked bankruptcy expertise and could not have been expected to understand or explain bankruptcy consequences. Appellant explains, "There was no evidence that he knew the ramifications of 'bankruptcy' well enough to warn the plaintiff. . . . Bankruptcy is not every lawyer's cup-of-tea. It is complex and fraught with trip-wires and trap-doors."[65]

At the Hearing, the Bankruptcy Court never mentions § 523(a)(2)(B) reasonable reliance. To the extent Appellant argues a finding of "reasonable" reliance is implicit in the Bankruptcy Court's ruling, this argument is not persuasive. The Bankruptcy Court's

---

[61] *Id.*
[62] *Id.* at 44 in Appellant's App. at 185.
[63] Appellant's Am. Opening Br. at 13.
[64] *Id.* at 15.
[65] *Id.*

analysis reflects the justifiable reliance standard because it evaluated reliance based on Appellant's actual knowledge at the time of the Stipulated Judgment, including the disclosure Appellee might file bankruptcy. This approach aligns with *Field*, which defines justifiable reliance as turning on "the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case," rather than a community standard.[66] By contrast, a reasonable reliance analysis would require assessing what a "prudent man" would have done, a formulation *Field* expressly rejected as part of § 523(a)(2)(A).[67]

Appellant does not show she justifiably relied on any representation by Appellee. Appellant was expressly advised through her own counsel before signing the Stipulated Judgment Appellee "might file bankruptcy," and nothing in the record indicates Appellee contradicted or undermined the disclosure. Thus, Appellant has failed to show she justifiably relied on an implied assurance of payment when entering the Stipulated Judgment.

Accordingly, the Bankruptcy Court did not err as a matter of law and did not make clearly erroneous factual findings in applying the justifiable reliance standard and determining Appellant failed to establish reliance under § 523(a)(2)(A).

---

[66] *Field v. Mans*, 516 U.S. 59, 71 (1995).
[67] *Id.* at 70–71.

19

## 2.  The Bankruptcy Court did not err in declining to apply Civil Rule 50(a).

Civil Rule 50(a) governs judgments as a matter of law in jury trials. Under Civil Rule 50(a)(1), "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may resolve the issue against the party" and grant judgment as a matter of law.[68] In ruling on a Civil Rule 50(a) motion, the court must view the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party, and it may not weigh credibility or resolve conflicts in the evidence.[69] Litigants are "entitled to judgment as a matter of law only if all of the evidence, viewed in the light most favorable to the nonmoving party, reveals no legally sufficient evidentiary basis to find for the nonmoving party."[70]

By contrast, Civil Rule 52(c) is made applicable to adversary proceedings by Rule 7052 and provides the following:

> If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue. The court may, however, decline to render any judgment until the close of the evidence. A judgment on partial findings must be supported by findings of fact and conclusions of law as required by [Civil] Rule 52(a).

---

[68] Fed. R. Civ. P. 50(a)(1).

[69] *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

[70] *Jones v. United Parcel Serv., Inc.*, 674 F.3d 1187, 1195 (10th Cir. 2012) (internal citation omitted).

Civil Rule 52(a)(1) further provides "[t]he findings and conclusions may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum of decision filed by the court." In deciding a Civil Rule 52(c) motion, "the trial court is not required to consider the evidence in the light most favorable to the plaintiff, but instead must undertake the fact finding process which involves a weighing of the evidence and an assessment of the credibility of the witnesses to determine whether or not the plaintiff has demonstrated a factual and legal right to relief."[71]

The Bankruptcy Court did not address or apply Civil Rule 50(a) and did not characterize its ruling as a judgment as a matter of law. Instead, after Appellant rested, the Bankruptcy Court issued oral findings of fact and conclusions of law and entered judgment in favor of Appellee.

Appellant argues the Bankruptcy Court erred by granting judgment as a matter of law because, in her view, "the evidence showed prima facie evidence of fraud," making the ruling "reversible, requiring remand."[72] Relying on Civil Rule 50(a), Appellant asserts judgment as a matter of law is improper where the non-moving party has presented sufficient evidence to establish a prima facie case, emphasizing "all inferences should be drawn in favor of the non-moving party, credibility cannot be weighed and

---

[71] *Roth v. Am. Hosp. Supply Corp.*, 965 F.2d 862, 865 (10th Cir. 1992) (quoting *Blankenship v. Herzfeld*, 661 F.2d 840, 845 (10th Cir. 1981) and *Feldman v. Pioneer Petroleum, Inc.*, 813 F.2d 296, 299 & n.4 (10th Cir. 1987) (further citations, quotation marks, and alterations omitted)).

[72] Appellant's Am. Opening Br. at 17.

should not be granted unless the non-moving party has failed to make a prima facie case in support of her position."[73]

The Bankruptcy Court did not err in declining to apply Civil Rule 50(a). Although Appellant characterizes the Bankruptcy Court's ruling as an improper grant of judgment as a matter of law under Civil Rule 50(a), this was a bench trial, not a jury trial. Civil Rule 50(a) governs judgments as a matter of law in jury trials and therefore does not control here.

To the extent Appellant also argues it was procedurally improper for the Bankruptcy Court to enter judgment following the close of Appellant's case, that argument is likewise unpersuasive. The Bankruptcy Court here acted within its authority in entering judgment at the close of Appellant's case and subsequently entering written findings of fact and conclusions of law. The Bankruptcy Court was not required to view the evidence in the light most favorable to Appellant or defer judgment until the close of all evidence.[74] The record shows the Bankruptcy Court weighed the evidence to determine whether Appellant demonstrated a factual and legal right to relief and decided Appellant failed to carry her burden by a preponderance of the evidence.[75] The Bankruptcy Court determined Appellant failed to carry her burden on elements essential to her § 523(a)(2)(A) claim, and Civil Rule 52(c) expressly permits judgment where a

---

[73] *Id.* at 17–18.

[74] *See* Fed. R. Civ. P. 52(c); *Roth v. Am. Hosp. Supply Corp.*, 965 F.2d 862, 865(10th Cir. 1992); *Blankenship v. Herzfeld*, 661 F.2d 840, 845 (10th Cir. 1981).

[75] Tr. at 41–42, 44–45 in Appellant's App. at 182–83, 185–86.

claim "can be maintained or defeated only with a favorable finding on that issue."[76] Further, the subsequent entry of findings of fact and conclusions of law complied with Rule 52(a)(1), which allows such findings to be stated on the record or set out in a later written decision.

Accordingly, the Bankruptcy Court applied the correct procedural framework and evaluated the sufficiency of Appellant's evidence under the proper standard, and thus, did not err in declining to apply Civil Rule 50.

## V.    Conclusion

Appellant has failed to demonstrate the Bankruptcy Court abused its discretion in entering judgment in favor of Appellee under § 523(a)(2)(A). Nor has Appellant shown the Bankruptcy Court erred as a matter of law or made clearly erroneous factual findings. Accordingly, we AFFIRM.

---

[76] Fed. R. Civ. P. 52(c).